UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TY EVANS,

    Plaintiff,

    v.      CAUSE NO. 3:22-CV-871-JD-MGG

JACQUELINE MONACO, et al.,

    Defendants.

OPINION AND ORDER

Ty Evans, a prisoner without a lawyer, filed a complaint against Nurse Jacqueline Monaco and Wexford of Indiana, LLC. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Evans alleges that his cellhouse was placed on quarantine lockdown on October 13, 2020, after an inmate tested positive for COVID-19. Evans had close contact with the COVID-19 positive inmate on October 12, 2020. Several other inmates in the cellhouse tested positive for COVID-19 in the coming days, and they were transferred to the

prison's infirmary. On October 26, 2020, Evans sent a sick call request that stated the following:

> The coughing, shortness of breath, and headaches I have had since May 1st have gotten MUCH WORSE in the last month. When I notified medical of this condition in early September, you did bloodwork and chest Xrays, but no treatment plan resulted. A nurse said it might be allergies but I've gotten worse with the colder weather. I cough constantly such that I cannot sleep beyond 15 minutes at a time. Living like this is EXHAUSTING and PAINFUL. Can I get some kind of treatment? Cough medicine? Tylenol? Antibiotics?   - THANK YOU.

ECF 1-1 at 2.

While the cellhouse was on quarantine lockdown, sick call was suspended, but a nurse visited the unit daily. The nurse took temperatures, and COVID-19 tests were administered to inmates who registered a temperature of at least 100º for two consecutive days. Evans told the nurse that visited the cellhouse about his symptoms daily, but his temperature never registered more than 99.2º, and he therefore did not receive a COVID-19 test.

On November 2, 2020, the quarantine lockdown ended. Nurse Jacqueline Monaco sent Evans a pass permitting him to go to sick call the following day. But, at 10:00 a.m. on November 3, 2020, all sick calls for the day were cancelled. The unit returned to quarantine lockdown later that day. Evans was not examined by Nurse Monaco or any other medical provider.

On November 5, 2020, Evans was unable to walk due to swelling in his legs. He had severe coughing, hypoxia, and extreme shortness of breath. He alerted a correctional officer to his condition. The officer carried him downstairs to a wheelchair and took him to the medical unit. His oxygen levels registered 70 percent. He was placed on oxygen and an ambulance was called. At the hospital, Evans was diagnosed with bacterial pneumonia, pulmonary embolism, deep vein thrombosis, diabetes, and COVID-19. He spent thirteen days at the hospital, including ten days in the intensive care unit.

On December 1, 2020, Evans discovered a response to his October 26, 2020, medical request, signed by Nurse Monaco. The response is dated September 4, 2020, and it reads "COVID-19 negative sent to ER." Evans notes that he was never tested for COVID-19 at the prison and was not sent to the emergency room until November 5, 2020.

Evans alleges that Nurse Monaco was deliberately indifferent to his serious medical needs when she failed to promptly respond to his October 26, 2020, healthcare request. Evans argues that Nurse Monaco knew that Evans was housed in a unit experiencing an outbreak of COVID-19, knew to be vigilant for signs of COVID-19, and knew Evans was reporting symptoms of COVID-19, and yet she did nothing. Evans was 58 years old and obese at the time, placing him at greater risk for complications from COVID-19. He was also diabetic, although he did not know it because his A1C levels had not been tested by the prison for four years.

In medical cases, the Constitution is violated only when a defendant is deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*,

4

658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Here, Nurse Monaco reviewed Evans' medical request indicating he had symptoms consistent with COVID-19. It is unclear if she was familiar enough with Evans to know his age and weight, but what is clear is that she did respond to Evans' request once the quarantine lockdown lifted. That same day she issued a pass to attend sick call the next day. That is the full extent of her involvement. There is no indication Nurse Monaco made the decision to cancel sick call the following day or was otherwise responsible for Wexford's policy of not conducting sick call when a unit was on quarantine lockdown. But, even if Nurse Monaco was responsible for the decision not to see Evans as scheduled on November 3, 2020, nurses were present in the unit daily taking temperatures of inmates, including Evans. It seems likely they would have been aware of his condition and could have recommended treatment. When Evans' situation deteriorated on November 5, 2020, he was able to ask for and obtain prompt medical care. The facts alleged in the complaint suggest that Nurse Monaco may have been negligent, but they do not suggest deliberate indifference to Evans' medical needs.[1] Therefore, he will not be granted leave to proceed against Nurse Monaco.

---

[1] The erroneous information contained on the response to Evans' medical request occurred after the decision was made to call an ambulance for him. It is unclear why Nurse Monaco would have stated that a COVID-19 test was negative when one was not performed, or why she would have erroneously dated the response for November 4, 2020, but these errors do not demonstrate she was deliberately indifferent to Evans' medical needs.

5

Evans believes Wexford's policy of suspending sick call during quarantine lockdown[2] and not testing inmates unless they had a fever of at least 100º for two days was unconstitutional.[3] A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

The decision to discontinue sick call during a quarantine lockdown and instead have nurses assess inmates for COVID-19 by taking temperatures does not show deliberate indifference. One must also assess the conduct based upon what was known by the medical community during the relatively early stages of the pandemic. The system was not perfect, and care was perhaps delayed due to the combined effect of the discontinuation of sick call and the decision to use 100º as the cutoff point for testing for COVID-19. But, nurses saw Evans daily. If one of the nurses believed Evans required medical care, there is no indication that it was unavailable; when he alerted correctional

---

[2] Evans also argues that the suspension of sick call violates Wexford's own policies, but a policy violation does not equate to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

[3] He notes that COVID-19 patients do not necessary exhibit a fever.

6

staff to his emergency condition, he received prompt care. Unfortunately, that did not occur sooner, but Wexford cannot be held liable for the poor decisions its staff made in connection with Evans' care. Therefore, Evans may not proceed against Wexford.

This complaint does not state a claim for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Evans may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form[4] which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

As a final matter, Evans recently filed two motions asking that his complaint be screened. ECF 8; ECF 9. Certainly, this case is important, but this is not the only case pending before this court and all cases filed in this court are important. It takes time to accurately review and justly rule on each filing. Doing that is delayed by unnecessary motions like these. Requests for rulings merely waste judicial resources and clutter the docket with unnecessary entries, and the motions will therefore be denied.

---

[4] Pursuant to Northern District of Indiana Local Rule 7-6, Evans is required to use this form.

For these reasons, the court:

(1) DENIES as unnecessary the motions asking that the complaint be screened (ECF 8; ECF 9);

(2) GRANTS Ty Evans until **August 24, 2023**, to file an amended complaint; and

(3) CAUTIONS Ty Evans if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 28, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT