# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA

[This form is for prisoners to sue for civil rights violations. NEATLY print in ink (or type) your answers.]

**TY EVANS**

[You are the PLAINTIFF, print your full name on this line.]

SCANNED at ISP and Emailed on
8-14-23 by AH . 15 pages
(date)    (initials)    (num)

v. Case Number

[For a new case in this court, leave blank.

3:22-cv-871-JD-MGG

, The court will assign a case number.]

[The DEFENDANT is who you are suing. Put ONE name on this line. List ALL defendants below, including this one.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]

## AMENDED
## PRISONER COMPLAINT

| # | Defendant's Name and Job Title | Work Address |
|---|---|---|
| 1 | [Put the defendant named in the caption in this box.] JACQUELINE MONACO | ISP - Medical Dept. One Park Row Michigan City, IN 46360 |
| 2 | [Put the names of any other defendants in these boxes.] WEXFORD OF INDIANA, LLC | 9245 N. Meridian St. Indianapolis, IN, 46260 |
| 3 | | |

[If you are suing more defendants, attach an additional page. Number each defendant. Put the name, job title, and work address of each defendant in a separate box as shown here.]

1. How many defendants are you suing? __2__
2. What is the name and address of your prison or jail? __INDIANA STATE PRISON__

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

One Park Row, Michigan City, IN, 46360

3. Did the event you are suing about happen there?   ●Yes.   ○ No, it happened at: _____

4. On what date did this event occur? OCTOBER 25, 2020 events began

## CLAIMS and FACTS

DO: Write a short and plain statement telling what each defendant did wrong.

DO: Use simple English words and sentences.

**DO NOT**: Quote from cases or statutes, use legal terms, or make legal arguments.

DO: Explain when, where, why, and how each defendant violated your rights.

DO: Include every fact necessary to explain your case and describe your injuries or damages.

DO: Number any documents you attach and refer to them by number in your complaint.

**DO NOT**: Include social security numbers, dates of birth, or the names of minors.

DO: Use each defendant's name every time you refer to that defendant.

DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. _____

SEE PAGE 6

I AM ATTACHING ALL CLAIMS AND FACTS BECAUSE THIS FORM IS INADEQUATE DUE TO ITS LINE SPACING MISPRINTS.

THIS IS THE FORM THE I.S.P. LAW LIBRARY PROVIDED. IF IT'S A MESS, THE COURT OUGHT TO PROVIDE A BETTER ONE!

SEE:
[*DO NOT* write in the margins or on the back of any pages. Attach additional pages if necessary.]

**Claims and Facts (continued)**

Weird Line Spacing – UNUSABLE

SEE PAGE 6

SEE:

[*DO NOT* write in the margins or on the back of any pages. Attach additional pages if necessary.]

_____
_____
_____
_____

5. When did this event happen?
   ○ Before I was confined.
   ○ While I was confined awaiting trial.
   ● After I was convicted while confined serving the sentence.
   ○ Other: _____

6. Have you ever sued anyone for this exact same event?
   ● No.
   ○ Yes, attached is a copy of the final judgment OR an additional sheet listing the court, case number, file date, judgment date, and result of the previous case(s).

7. Could you have used a prison grievance system to complain about this event? ○ No, this event is not grievable at this prison or jail.
   ● Yes, I filed a grievance and attached is a copy of the response from the final step.
   ○ Yes, this event was grievable, but I did not file a grievance because _____

_____
_____
_____

8. If you win this case, what do you want the court to order the defendant(s) to do? [NOTE: A case filed on this form will not overturn your conviction or change your release date.]

COMPENSATION $100,000   PUNITIVE DAMAGES $300,000
Repay all costs, fees, and attorney fees.

[Initial Each Statement]   FILING FEE HAS BEEN PAID IN FULL ALREADY - Dec. 2022
_JE_ I will pre-pay the filing fee OR file a prisoner motion to proceed in forma pauperis.
_JE_ I will keep a copy of this complaint for my records.
_JE_ I will promptly notify the court of any change of address.
_JE_ I WILL NOT send more than one copy of any filing to the court.
_JE_ I WILL NOT send summons, USM-285, or waiver forms to the clerk.
                                                                SEE:
[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

-4-

___JE___ I declare **under penalty of perjury** that the statements in this complaint are true.

I placed this complaint in the prison mail system on __8__/__14__/20__23__ at __9:45__ am/pm.
[Do not fill in this date and time until you give the complaint to prison officials to send to the court.]

_____Jy Evans_____          _____158293_____
**Signature**                          **Prisoner Number**

_____
_____
_____
_____
_____

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

## CLAIMS and FACTS
## 22-cv-871

(1) On 10-13-2020 at 9am the I-Cellhouse residential unit at Indiana State Prison where Plaintiff Ty Evans resided was placed on a quarantine lockdown due to prisoner Matthew Thies #223125 testing positive for COVID-19.

(2) On 10-12-2020 Evans had close contact with Thies when Thies visited Evans' cell requesting over-the-counter medication.

(3) From 10-13-2020 thru 11-23-2020, Wexford enforced a policy, procedure, or practice whereby Wexford staff visited I-Cellhouse daily, taking forehead temperatures of prisoners, and allowing to be tested for COVID-19 ONLY IF the prisoner had a temperature above 100°F. for two consecutive days.

(4) *Every mention of policy, procedure, or practice in this Complaint is listed here SOLELY to provide a basis for establishing a MONELL claim.

(5) Evans' maximum temperature during the above lockdown period was 99.2°F, so Evans was never given a test to see if he had contracted COVID-19.

(6) On 10-26-2020 Evans submitted a Health Care Request Form (HCRF), No. 087152, to Wexford, complaining of

-6-

coughing, shortness of breath, and headaches that have gotten "MUCH WORSE" in the last month. Evans wrote that he would "cough constantly such that I cannot sleep beyond 15 minutes at a time." It was "EXHAUSTING and PAINFUL." Evans requested treatment.

(7) An HCRF is screened by a Wexford employee when it is received. A nurse does the screening by looking at the prisoner's computerized medical file, which has the prisoner's age, height, weight, and complete medical history while incarcerated.

(8) Defendant Nurse Jacqueline Monaco screened Evans' HCRF on 10-27-2020. Monaco is not a clerical worker but a licensed nurse.

(9) This is what Nurse Monaco KNEW when she screened Evans' HCRF NO. 087152:

    A - Evans lived in a unit on quarantine because over a dozen prisoners there tested positive for COVID-19.

    B - Evans' HCRF included COVID-19 symptoms, which were severe coughing, headaches, shortness of breath, and insomnia that was exhausting and painful.

    C - Prisoners with COVID-19 symptoms should be tested for COVID-19.

-7-

    D - She knew Evans had been complaining of pneumonia symptoms since September 2020.

    E - Knew Evans was classified as obese, with a BMI of 36, and knew this heightened Evans' risks if he had COVID-19.

    F - Knew Evans was 58 years old, which heightened Evans' COVID-19 risk.

    G - Knew Evans had not been given an Annual Health Screening in almost four years, which would have been used to further identify if Evans was diabetic, another COVID-19 risk factor.

    H - Knew that Evans described a COVID-19 set of symptoms, because she wrote on HCRF No. 087152: "COVID-19 negative, sent to ER."

(10) Nurse Monaco made the inference that Evans was complaining of COVID-19 symptoms, when she wrote her reply on Evans' HCRF.

(11) In fact, Evans was **Not** COVID-19 negative; he was COVID-19 positive.

(12) Evans was never tested for COVID-19 at Indiana State Prison.

(13) In October 2020 the COVID-19 pandemic was seven months along, and the drug Remdesivir

was known by medical personnel like Nurse Monaco to be widely available and highly effective in alleviating COVID-19's progression IF, and ONLY IF, the virus was detected in its early stage of contraction.

(14) On 10-27-2023 Nurse Monaco knew Evans needed to be tested for COVID-19. Monaco knew she could ask any other nurse visiting I-Cellhouse to do the test. Monaco chose NOT to have Evans tested for COVID-19.

(15) Monaco knew COVID-19 was a "serious medical need" and that the virus, if undetected and untreated, could cause a rapid and painful death.

(16) Had I-Cellhouse not been on lockdown, Evans would have been called to "sick call" by Monaco on 10-27-2020. Monaco knew sick call passes would not be passed out until after lockdown.

(17) The suspension of sick call lines was a Wexford policy, practice, or procedure (not a prison policy). This is listed here for MONELL claim reasons.

(18) Evans complained of COVID symptoms to other nurses visiting I-Cellhouse once a day, but he was not given a COVID-19 test by those nurses because he did not have a fever in excess of 100°F.

(19) Those nurses who physically saw Evans were constrained by Wexford's practice of not testing prisoners for COVID-19 unless they were over 100°F two days in a row; therefore MONELL liability should apply.

(20) Evans continued to complain, verbally to other nurses, of being hypoxic, unable to taste, having swollen ankles, and having extreme exhaustion, but they were unable to offer a COVID-19 test due to Wexford's 100° temperature practice.

(21) On 11-2-2020 I-Cellhouse came off lockdown.

(22) On 11-3-2020 Monaco issued a pass for Evans to go to sick call at 1pm. However, at 10 am all medical passes were cancelled, and Evans was not seen by Nurse Monaco or any other medical staff. At 3pm I-Cellhouse returned to quarantine lockdown due to another prisoner testing positive for COVID-19.

(23) Monaco did not re-issue a pass for Evans to go to sick call, and she still did not arrange for any other Wexford employee to give Evans a COVID-19 test.

(24) On 11-5-2020 Evans was unable to walk due to swelling in his legs. Evans had a severe cough, extreme chest congestion, was hypoxic and disoriented, was sleep deprived, and had extreme shortness of breath, nearly unable to breathe at all. Evans qualified for and declared a medical emergency to a correctional officer.

(25) Officers carried Evans from the third floor to a wheelchair and took him to medical. Evans' blood oxygen saturation was only 70%. Evans was placed on an oxygen tank, whereby his blood oxygen saturation reached 78%. Dr. Nancy Marthakis immediately called an ambulance to transport Evans to Franciscan Hospital's Emergency Room.

(26) Other than about 10 minutes on the oxygen tank, Evans received <u>NO MEDICAL CARE</u> from the Defendants, Monaco and Wexford.

(27) Nurse Monaco knew Evans had a potentially "serious medical need" and she was "deliberately indifferent" to that need by doing NOTHING for Evans.

(28) As someone wrote in SNYDER v. IDOC, 2022 USDC Lexis 198592 (N.D. Ind.), quoting the 7th Circuit in GOODLOE v. SOOD, 947 F.3d 1026, 1031 (7 Cir. 2020):

> Nevertheless, "inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering."

In the SNYDER case, the liability attached to the first person who knew about the serious medical need and did nothing.

(29) Monaco was the first Wexford employee to recognize Evans had a serious medical need, and she did nothing but delay or refuse to provide medical treatment.

(30) At Franciscan Hospital's ER, Evans was diagnosed with bacterial pneumonia, pulmonary embolism, deep vein thrombosis, diabetes, and was found COVID-19 positive through an antigen (blood) test. This was 11-5-2020.

(31) Evans was given Remdesivir, but it had no effect because Evans' COVID infection had progressed too far. Had COVID-19 been detected earlier, Remdesivir may have been effective.

-12-

(32) On 11-7-2020 Evans was moved into ICU and endured a rigorous course of treatment. Nurses at Franciscan later informed Evans that they initially put his chances of recovery at "no better than 50-50."

(33) In ICU, Evans was so weak that he could barely roll to his side to allow nurses to clean him. He was placed on a BiPap machine that forced oxygen into his lungs, and was given numerous medications by injection, over 100 injections in all. He experienced extreme pain and overwhelming fatigue and was given physical therapy to be able to resume standing then walking. Respiratory therapists helped him try to re-attain lung capacity. It was an extraordinarily painful ordeal.

(34) On 11-17-2020 Evans recovered sufficiently to be moved out of the ICU.

(35) On 11-18-2020 at 4pm Evans was discharged back to ISP. At ISP he was placed in the Infirmary Ward, under quarantine, and on an oxygen machine.

(36) On 12-1-2020 Evans was released from the ISP Infirmary and returned to cell I-310-B in I-Cellhouse.

(37) On 12-1-2020 Evans discovered Monaco's written response to his 10-26-2020 HCRF. Her response was dated 11-4-2020 and read: "COVID-19 negative, sent to ER." [EXHIBIT A in Original Complaint]

(38) The Franciscan bill for Evans' treatment was over $98,000.

(39) On 6-1-2021 Evans self-reported unusual personal behavior indicating stress related to his COVID-19 experience.

(40) Long term, Evans' recovery has remained difficult. Whereas prior to COVID he could do 50 push-ups in one minute, or 50 sit-ups, or 100 jumping jacks, today Evans struggles to do 10, 10, and 30 of those exercises.

(41) As for exhaustion of administrative remedies, Evans exhausted to the fullest extent he was allowed, as related back in the Original Complaint, Section V, #1 thru #15. If the Defendants request a PAVEY hearing, all copies of the grievance process Evans exhausted will be provided.

-14-

(42) Nurse Monaco is liable because she knew Evans was at risk if he had COVID-19, knew Evans was complaining of COVID symptoms, she correctly identified in writing that this was a COVID-19 case, and knew she could order Evans to be tested for COVID-19 as early as 10-27-2020. Monaco's "deliberate indifference" was her choice to do nothing for Evans even though proactive choices were available. A responsible medical professional does not ignore COVID symptoms, particularly during a spike in COVID cases as we experienced in October 2020. Doing nothing for Evans was not just negligence, it was far beyond negligence — it was deliberate and totally indifferent.

(43) Responses to COVID-19 like Monaco's, and Wexford's treatment-restrictive practices, are why prisoners died at a rate about double that of the free-world population in America. The dead didn't survive to sue their medical providers. __I did__. This suit should go forward.

                                                                         */s/ Evans*   8/14/2023

Law Library Supervisor
Indiana State Prison
1 Park Row
Michigan City, IN. 46360






-RECEIVED-
AUG 17 2023
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Northern District Court
South Bend Division
U.S. Courthouse
204 S. Main Street
South Bend, IN 46601

INDIANA STATE PRISON
LAW LIBRARY
LEGAL MAIL