UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TY EVANS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-871-JD-MGG |
| JACQUELINE MONACO, et al., | |
| Defendants. | |

OPINION AND ORDER

Ty Evans, a prisoner without a lawyer, filed an amended complaint against Nurse Jacqueline Monaco and Wexford of Indiana, LLC. ECF 11. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Evans' amended complaint alleges many of the same facts as his earlier complaint but with critical additions. He alleges that his cellhouse was placed on quarantine lockdown on October 13, 2020, after an inmate tested positive for COVID-19. Evans had close contact with the COVID-19 positive inmate on October 12, 2020. On October 26, 2020, Evans sent a sick call request complaining of coughing, shortness of

breath, and headaches that had worsened over the last month. He noted that he was coughing constantly and only able to sleep fifteen minutes at a time. He indicated that his condition was exhausting and painful, and he requested treatment.

While the cellhouse was on quarantine lockdown, sick call was suspended, but nurses visited the unit daily. The nurses took temperatures, and COVID-19 tests were administered only to inmates who registered a temperature of at least 100º for two consecutive days.

Nurse Monaco screened Evans' health care request on October 27, 2020. When she screened the request, she knew Evans was in a unit on quarantine because a dozen prisoners had tested positive for COVID-19. She also knew he had symptoms consistent with COVID-19. She knew he had been complaining of symptoms of pneumonia since September. She knew he was at greater risk of complications from COVID-19 because of his somewhat advancing age of 58 and his level of obesity (a BMI of 36). If Evans' unit had not been on lockdown, he believes he would have had a sick-call appointment that day. Because of the lockdown, he did not receive a sick-call appointment, and Nurse Monaco did not take steps to have Evans tested for COVID-19. He further asserts that, in October 2020, Remdesivir was known to alleviate COVID-19 progression if and only if detected early.

Evans continued to complain of symptoms of COVID-19 to the nurses that visited the unit, but the only assessment he received was screening for COVID-19 by taking his temperature, and because his temperature did not exceed 100º for two days in a row, he did not qualify for COVID-19 testing.

On November 2, 2020, the quarantine lockdown ended. Nurse Monaco sent Evans a pass permitting him to go to sick call the following day. But, at 10:00 a.m. on November 3, 2020, all sick calls for the day were cancelled. Evans was not examined by Nurse Monaco or any other medical provider. At 3:00 p.m., the unit was placed on lockdown due to another inmate testing positive for COVID-19. Nurse Monaco neither arranged for Evans to go to sick call while the unit was on lockdown nor arranged to have a nurse assess his condition in the unit.

On November 5, 2020, Evans was unable to walk due to swelling in his legs. He had severe coughing, extreme congestion, hypoxia, disorientation, and extreme shortness of breath. He alerted a correctional officer to his condition. The officer carried him downstairs to a wheelchair and took him to the medical unit. His oxygen saturation level registered 70 percent. He was placed on oxygen, which raised his oxygen saturation level to 78%. Nurse Monaco did nothing further for Evans, but Dr. Nancy Marthakis called for an ambulance and had Evans transported to the Franciscan Hospital. At the hospital, Evans was diagnosed with bacterial pneumonia, pulmonary embolism, deep vein thrombosis, diabetes, and COVID-19. He was given Remdesivir, but it had no effect because the infection had progressed too far. He spent thirteen days at the hospital, including ten days in the intensive care unit.

Nurse Monaco's response to Evans' health care request is dated November 4, 2020, and it reads "COVID-19 negative sent to ER." Evans notes that he was never tested for COVID-19 at the prison and was not sent to the emergency room until November 5, 2020.

Evans alleges that Nurse Monaco was deliberately indifferent to his serious medical needs when she failed to promptly respond to his October 26, 2020, healthcare request. Evans argues that Nurse Monaco knew that Evans was housed in a unit experiencing an outbreak of COVID-19, knew Evans was reporting symptoms of COVID-19, and knew his age and weight put him at greater risk for complications from COVID-19. Evans also notes, perhaps more importantly, that Monaco was aware of his pneumonia like symptoms, which he had experienced since the previous month, and his deteriorating condition.

In medical cases, the Constitution is violated only when a defendant is deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

4

demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Here, Nurse Monaco knew Evans had suffered from pneumonia-like symptoms since September and reviewed his medical request indicating he had a serious medical condition, including symptoms consistent with COVID-19. And because she maintained control over the request while the unit was on lockdown, a reasonable inference can be drawn at this stage that she was aware of his deteriorating condition as Evans was visited by nurses on a daily basis. Despite that, she waited to respond to his serious medical condition until the quarantine was lifted, and when the quarantine was reinstated before Evans could be seen, she took no further steps to arrange for him to be assessed. Then, after Evans' condition had deteriorated to the point where he required emergency care, she responded in a manner that is confusing at best by indicating that he had tested negative to COVID-19 and been transferred to the hospital a day sooner

than a transfer occurred. Evans notes that the nurses visiting his housing unit daily could not test him for COVID-19 because of Wexford's policy, but that policy did not prevent Nurse Monaco from otherwise responding to serious medical needs that came to her attention, whether related to COVID-19 or another condition. Evans' situation deteriorated on November 5, 2020, when he was able to ask for and obtain prompt assistance from correctional staff, who took him to the medical department. Therefore, it can be plausibly inferred that Nurse Monaco's hands were not tied by policies regarding COVID-19 testing and she could have taken steps to ensure that Evans' complaints of serious medical symptoms were assessed prior to the point where he needed urgent hospitalization on November 5, 2020.

Evans believes Wexford's policy of suspending sick call during quarantine lockdown and not testing inmates unless they had a fever of at least 100º for two days was unconstitutional. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

The decision to discontinue sick call during a quarantine lockdown and instead have nurses assess inmates for COVID-19 by taking temperatures did not cause a

6

violation of Evans' constitutional rights. One must assess Wexford's policies based upon what was known by the medical community during the relatively early stages of the pandemic. Allowing quarantined inmates to leave the quarantine area for sick call would have posed obvious risks to both prisoner and staff. And nurses saw Evans daily; so it cannot be plausibly inferred that the policy made medical care unavailable if nursing staff believed it was necessary. When Evans alerted correctional staff to his emergency on November 5, 2020, he received a prompt response. While Evans should have received care much sooner, Wexford cannot be held liable for the poor decisions its staff made in connection with his care. Therefore, Evans may not proceed against Wexford.

For these reasons, the court:

(1) GRANTS Ty Evans leave to proceed against Jacqueline Monaco in her individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical needs from October 27, 2020, through November 5, 2020, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Wexford of Indiana, LLC;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Jacqueline Monaco at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 11);

(5) ORDERS Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of the defendant, if she does not waive service and it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Jacqueline Monaco to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 13, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT